# Trego *versus* Huzzard.

1. The county treasurer's book showed a redemption within proper time of unseated land sold for taxes; and, as to the question whether a stranger to the title, who redeemed, had authority to do so, it was *held*, that the Court should have received in evidence declarations of a trustee of the title to the land sold, made after the sale and before the redemption, to the effect that the person who afterwards made the redemption, had been employed to pay the taxes on the land, the trustee being dead at the time of trial.

2. The person who bought the land at the tax sale was offered to prove that he did not give bond for the surplus money, and that the land was *seated* when assessed for taxes as unseated: *Held*, that he was a competent witness; the existence of the bond being doubtful, his interest was doubtful, and he was therefore competent.

ERROR to the Common Pleas of *Indiana county*.

This was an ejectment by Trego and wife v. Irwin, Taylor, and Huzzard, for 240 acres of land.

VOL. VII.—56

[Trego *v.* Huzzard.]

The right of the plaintiffs to recover in this case was founded on a warrant to *John Matthews*, dated 18th June, 1785, for 300 acres, survey on this warrant by Joshua Elder, dated 26th May, 1786, for 400½ acres. Patent to John Craig, dated 21st January, 1814, reciting that the interest of John Matthews was sold by the sheriff to John Craig. Deed from John Craig and wife, dated 18th February, 1820, *to George Evans in trust for James Dunwoody*, a lunatic, for 200½ acres, a part of the land patented above, and in dispute. James Dunwoody died 6th or 7th June, 1826, leaving issue five children and grandchildren, the issue of a daughter, who died before him. William Dunwoody, the only son, died in October, 1829, intestate as to this land in dispute. Rudolph Huzzard, one of the defendants, is married to one of the daughters, and Joseph P. Trego is married to Mary, another daughter, and if there were nothing more in the case, the plaintiffs, Joseph P. Trego and Mary his wife, would be entitled to a verdict for the one undivided fifth part of the land in dispute.

In order to defeat the recovery, the defendants gave in evidence the assessment for taxes in Conemaugh township, of the land in dispute as unseated, and a deed for the same by James Todd, treasurer, dated 23d June, 1834, acknowledged 23d September, 1834, *to Hugh Bleakley* for county taxes for the year 1833, $1.00; road taxes for 1829, $1.00; 1830, $0.67; 1831, $1.00; 1832, $0.75; state tax for 1833, $0.33, in all, $4.83. The consideration in the deed was $76.00. The amount of taxes and costs endorsed on the deed was $9.20½. Also a deed from Hugh Bleakley to Rudolph Huzzard, one of defendants, dated September 19, 1838, for the same land, with special warranty; consideration, $115.00. The treasurer's deed, which was printed, except dates, names, and numbers, stated "that I, the said James Todd, treasurer of the county aforesaid, in consideration of the premises and of the aforesaid sum of seventy-six dollars to me in hand paid *by* the said Hugh Bleakley, *or secured to be paid*, agreeably to the laws of this Commonwealth, the receipt whereof, in such manner, I do hereby acknowledge, have granted, sold, &c." The receipt at the foot of the deed, also in print except as aforesaid, was in these words: "Received on the day of the date of the foregoing deed poll, of the above-named Hugh Bleakley, the full consideration therein mentioned, agreeably to the laws of this Commonwealth in such case made and provided.

JAMES TODD, Treasurer."

The defendants then rested.

The *plaintiffs'* counsel called A. W. Taylor, prothonotary, who testified that he had made search, and that no bond was to be found for the surplus purchase-money in this case.

James Todd, the treasurer who made the sale, being also called, testified that he had no distinct recollection of this case. He

[Trego v. Huzzard.]

,thought he took a bond in all cases, where the sale was for more than the taxes and costs; and that he filed in the prothonotary's office all the bonds he took.

Plaintiffs' counsel also offered to prove by Hugh Bleakley, the purchaser at the tax sale, that no bond was given at the time of the treasurer's sale to him in this case; that the land *was seated* at the time the taxes for which the sale was made were assessed, and that Rudolph Huzzard, when he purchased his tax title for this land, purchased for himself and the other·heirs of James Dunwoody, deceased. The defendants' counsel objected to the recep‑ tion of this evidence, on the ground that Hugh Bleakley was interested, *having given a surplus bond, and that the evidence of the existence of the bond contained in the deed and receipt at the foot thereof, excluded him from being a witness.* The Court sus‑ tained the objection and rejected the evidence, and this formed the *first* bill of exceptions on the part of the plaintiffs in error. There was no evidence of the existence of the surplus bond, ex‑ cept that contained in the deed and receipt. The plaintiffs proved by the treasurer of Indiana county, the treasurer's sale book. Also, that the words "13th June, 1836, redeemed by Joseph Turner," were in his handwriting. He said that he would not have made this entry unless he had received the redemption money. This was the usual entry made when lands were redeemed.

William Turner also testified that his father, Joseph Turner, had been dead about three years, that he had examined among his father's papers, and could not find any receipt in relation to the Matthews land.

The plaintiffs' counsel, in connection with the above testimony of the treasurer and Turner, offered to give in evidence the trea‑ surer's sale book, containing the following entries:

YOUNG TOWNSHIP.

"Acres.  Warrantees.  Taxes & costs.  Purchasers.                    Date.
200.  John Matthews.  $2.91½.  Hugh Bleakley  deed exec'd $76.00 23d June, 1834.
          13th June, 1836, redeemed by Joseph Turner."

Together with the deposition of Jesse James, taken 9th Sep‑ tember, 1851, under rule and notice, who testified, among other things, that he was guardian of three of the minor grandchildren of James Dunwoody, deceased, appointed about the year 1831. That George Evans, trustee of the estate of James Dunwoody, died in 1844; that in 1835, the said George Evans was acting as the agent of some of the heirs of James Dunwoody, also for de‑ ponent, so far as he was concerned as guardian for said minors, in relation to the said Indiana lands. That the said George Evans, in the year 1835, told deponent that a man named Joseph Turner had been employed to pay the taxes on the land in Indi‑ ana county. He also testified that Evans corresponded with Turner on the subject of these Indiana lands, and was then fully

[Trego *v.* Huzzard.]

authorized by said deponent to correspond with Turner, and see that the lands were not sold for taxes.

The defendants' counsel objected to the reception of this evidence, on the ground that the deposition shows only the declaration of Evans, and not the fact of appointment. The Court sustained the objection and rejected the evidence, and this was the subject of the *second* bill of exceptions on the part of the plaintiffs in error.

The question arising on this bill of exceptions was, whether there was sufficient evidence, to be left to the jury, of the authority of Joseph Turner, as the agent of the heirs of James Dunwoody, deceased, to redeem the land.

Verdict was rendered for defendants.

Error was assigned, *cum alia,* to the rejection of the evidence mentioned in the two bills of exceptions.

*Banks,* for plaintiffs in error.

*Drum,* for defendants.—Bleakley was incompetent to prove that the land was seated when sold for taxes; for if the sale to him were illegal, there could be no recovery on his bond, if he gave one.

The opinion of the Court was delivered by

LOWRIE, J.—The plaintiffs claim and show title to the land, and the defence rests upon a tax title, which the plaintiffs seek to evade by showing a redemption in proper time. The redemption was by Joseph Turner, and the difficulty in the Court below was as to Turner's agency. But when it is considered that Turner had no interest in the land, and that the treasurer's books show plainly that he did redeem it, it requires not much evidence to show that, in doing so, he acted as agent for the owner. The ordinary presumption arising from the course of human conduct, inclines us to believe it without other than the internal evidence of the transaction, and but little additional evidence suffices to fix the belief. That evidence is furnished by the testimony of Jesse James. True it is that he testifies only to what he heard Evans say as to Turner's agency. But this was enough; for Evans was the trustee of the title, had power to appoint an agent to attend to the payment of taxes; and his declarations and admissions were sufficient evidence of the fact that he had done so, if Turner were suing to recover for his services and advances; and sufficient, on the present question, as against persons deriving title to the land afterwards, as in this case. The testimony ought to have been received, and that would have admitted the treasurer's book showing the fact of redemption. The admissibility of this book

[Trego *v.* Huzzard.]

was the principal question argued here, though that ought not to be doubted, and that was not the point of the objection in the Court below.

Bleakley was the purchaser at the tax sale, and was offered to prove that he gave no surplus bond. The objection to him was, that his evidence tended to avoid the tax sale and thus discharge his bond. Admit that a judgment against the tax title would be evidence in his favor, if sued on his bond, the objection assumes the existence of a bond. In favor of a tax title, perhaps it would be presumed from the receipt on the deed that the bond was given. But that is not the question. Is there sufficient evidence of its existence to sustain an action upon it against Bleakley? This, as matter of fact, is very doubtful, and therefore, as matter of fact, his interest is doubtful, and therefore he ought to have been admitted as a witness.

Judgment reversed and new trial awarded.